THE PEOPLE *ex rel.* ROBERT J. KLAEREN II *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF LISLE *et al.*, Defendants-Appellants.

Second District    No. 2—99—1256

Opinion filed October 13, 2000.

RAPP, J., dissenting.

Thomas F. Geselbracht, David L. Reifman, Gilly Nadel, Danielle Meltzer Cassel, and Daniell Sveska, all of Piper, Marbury, Rudnick & Wolfe, and Robert J. DiLeonardi, both of Chicago, and Robert T.C. Kay, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton, for appellants.

Mark W. Daniel, John R. Zemenak, and Scott E. Pointner, all of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellees.

JUSTICE HUTCHINSON delivered the opinion of the court:

This matter reaches us as an interlocutory appeal of an order granting a preliminary injunction preventing defendants Saint Procopious Abbey (the Abbey) and Meijer, Inc. (Meijer), from continuing site preparation required for the construction of a Meijer retail store on a parcel of land owned by the Abbey pursuant to the terms of a contract for the sale of the parcel between Meijer and the Abbey. Plaintiffs are adjoining landowners, who alleged that, because of procedural defects, ordinances enacted by another defendant, Village of Lisle (the Village), annexing the Abbey property, rezoning the property, and authorizing construction as a planned unit development (PUD) were void.

Plaintiffs originally brought suit in their individual capacities but later added a count sounding in *quo warranto*, suing on behalf of the State. For the sake of clarity we will refer to them simply as "plaintiffs," whether they are acting as individuals or as the real parties in interest in the *quo warranto* action.

Defendants timely appeal and contend that (1) plaintiffs lack standing to challenge the annexation and rezoning; (2) plaintiffs do not have a protectable interest in the continuation of the existing zoning; (3) plaintiffs are unlikely to succeed on the merits of their claim because due process does not require cross-examination in a zoning

hearing; (4) plaintiffs are unlikely to succeed on the merits of their claim because Illinois statutory law does not create a right to cross-examination; (5) plaintiffs have not demonstrated irreparable injury; and (6) the trial court abused its discretion when it only required a bond of $5,000. We address defendants' third and fourth contentions in the published portion of this opinion. Defendants' remaining contentions are addressed in the nonpublished portion of the opinion. We affirm.

## BACKGROUND

### July 9, 1998, Hearing

Plaintiffs' challenge to the annexation and rezoning focused on procedural irregularities at the July 9, 1998, joint public hearing, and the testimony elicited at the hearing on the preliminary injunction also centered on the conduct of the July 1998 hearing. A transcript of that public hearing is contained in the record and reveals that on July 9, 1998, the Village board of trustees (board), the Village plan commission (plan commission), and the Village zoning board of appeals (ZBA) each convened a public hearing regarding the Meijer proposal at the Village hall. Each board then independently moved to recess its hearing and reconvene in the auditorium of a local junior high school. When the hearing reconvened, the mayor described the procedure as follows:

"This is a public hearing. It is not a debate. There will be no attempt at tonight's hearing to answer any question raised by the audience. Questions may be addressed during the review process I just described.

To the extent possible the speaker will address questions and concerned [*sic*] raised by the combined boards this evening.

\* \* \*

The petitioner will be first subject to any questions by the assembled boards. We will attempt to deal with each individual aspect of the presentation as it's made.

People in the audience speaking in favor of the proposal will then be heard. People in the audience speaking in opposition of the proposal will then be heard. The petitioner will then be allowed to make closing comments.

After closing comments by the petitioner, the public hearing will be adjourned.

Public records will remain open for written comments by interested parties. Any written comments must be received at the Village offices by 4:30 p.m. Friday, July 31st.

\* \* \*

To be fair to everyone in the audience, I ask that you limit your

comments to two minutes each. I will be the time keeper and will let you know when 15 seconds remain.

\* \* \*

No one will be allowed to speak a second time until everyone has an opportunity to speak once. That requirement will also be applicable to members of the assembled boards."

The first witness on behalf of Meijer was Dave Kasparik, an architect. Kasparik described the design of the proposed store and presented an artist's rendering of the completed building. Jacques Gourguechon, a land planner, described the proposed site plan, the location of the building, and the land use on the property. Donald O'Hara, a traffic consultant, presented the results of a traffic study conducted on roads surrounding the site and described the anticipated impact of the development and made recommendations for mitigating the impact. Christopher Burke, a hydraulic engineer, described the plans to accommodate water runoff and wetland mitigation. During the presentation, a number of members of the assembled bodies asked questions.

Following Meijer's presentation, the mayor invited those in favor to speak. Two members of the audience spoke in favor of the development. The mayor then invited those opposed to the development to speak.

The first individual to speak in opposition of the project was Scott Harbek. Harbek indicated that he represented a group calling itself "No Meijer on Maple." Harbek indicated that the group had collected over 2,000 signatures on a petition opposing the development. Harbek further stated that nine representatives from different subdivisions in Lisle had prepared three- to five-minute presentations on behalf of the group. Harbek asked whether such a presentation would be permitted, and the mayor responded that only a single representative would be allowed to speak on behalf of the organization and that the two-minute time limit would be enforced. The mayor further explained:

"Rather than try and debate with you the procedure we are going to try and follow, I tried to explain at the beginning of the meeting. My instructions would give everyone who wants to speak or had a written comment an opportunity to be heard. I think that is fair.

No matter what we do it is going to be characterized as being unfair. That being the case, we are going to proceed with the suggestion I made. You have two minutes, beginning now."

Harbek then opined that the proposed development would have a greater impact on traffic than the Meijer representative predicted. Harbek further opined that such a development was inappropriate for the neighborhood and would decrease the quality of life.

Howard Richter, a real estate appraiser, testified that he was familiar with Meijer stores and had conducted economic impact analyses on similar, unrelated projects. Richter admitted that he had not inspected the neighborhood but opined that homes in the blocks surrounding the development would be adversely impacted not less than 15% and those homes within a one-mile radius would be impacted 5% to 7%. Richter further stated that the public response to the proposal evidenced by the size of the crowd at the hearing supported his opinion of the impact on property values. The mayor interrupted, stating "15 seconds." Richter then addressed the issue of tax increment financing (TIF). The mayor interrupted again, stating, "Mr. Richter you are out of time. Thank you very much."

Another opponent, Michael Pfeifer, raised several concerns, including the possibility of parking lot traffic, snow removal operations, and garbage compactors creating noise pollution in the area. Pfeifer concluded, "So if you all would address those things, I would appreciate it." The Meijer representatives did not respond, and no member of the board, the plan commission, or the ZBA questioned the Meijer representatives further in response to Pfeifer's comments.

Many other individuals, including one of the plaintiffs, spoke in opposition to the proposal. Many speakers made only general comments, but several identified questions they wanted the assembled bodies to ask of the Meijer representatives. On several occasions the mayor warned individuals that their time had expired or was about to expire. After the final speaker, the mayor stated, "With that, we'll close the audience participation."

### Plaintiffs' Complaint

On February 11, 1999, plaintiffs filed a complaint against the Village seeking, among other things, an injunction to prevent a vote approving the annexation and rezoning. The trial court held that plaintiffs failed to name a necessary party and denied the injunction. On February 15, the board adopted ordinances annexing and rezoning the parcel and approving an annexation agreement with Meijer. The cause was continued several times, and plaintiffs amended their complaint to add Meijer and the Abbey as defendants and added a count sounding in *quo warranto*. On September 14, 1999, the trial court entered a temporary restraining order that halted excavation and landscaping work on the property. On October 4, 1999, the trial court conducted a hearing on plaintiffs' motion for a preliminary injunction.

### Trial Court's Ruling

On October 18, 1999, the trial court issued a memorandum opinion and order granting the preliminary injunction. The trial court relied

on *E&E Hauling, Inc. v. County of Du Page*, 77 Ill. App. 3d 1017 (1979), and held that a public hearing must include a right of cross-examination. The trial court further held that, although the mayor as chair of the July 1998 hearing had a right to impose reasonable conditions on the participation of the public, he could not totally deny plaintiffs the right to question the witnesses for Meijer. The trial court concluded that plaintiffs were likely to succeed on the merits of their claim that the public hearing was rendered illusory by the total denial of the right to examine Meijer's witnesses. The trial court also concluded that irreparable injury could be presumed because the Village board acted in violation of state law. The trial court ordered that no further action be taken on the Meijer site until further order of the court or until the Village held a proper public hearing on the matter. The trial court also ordered that plaintiffs post a bond of $5,000. Defendants timely appeal.

## ANALYSIS

### Due Process

■ Defendants argue that plaintiffs failed to demonstrate a likelihood of success on the merits because due process does not require the right of cross-examination in the zoning context. Key to our discussion of due process in the zoning context is the distinction between procedural and substantive due process. While procedural due process governs the methods by which the state may deprive an individual of a protected interest, substantive due process imposes absolute limits on the state's ability to act without regard to any of the procedural protections provided. *In re Perona*, 294 Ill. App. 3d 755, 760 (1998).

The seminal zoning case, *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114 (1926), recognized that the determination of the compatibility of land uses and the restriction of those uses to separate districts is an exercise of legislative wisdom limited only by substantive due process. *Euclid*, 272 U.S. at 395, 71 L. Ed. at 314, 47 S. Ct. at 121. Such regulation is unconstitutional if it is arbitrary and unreasonable and has no substantial relation to the public health, safety, morals, or general welfare. *Euclid*, 272 U.S. at 395, 71 L. Ed. at 314, 47 S. Ct. at 121. Illinois recognizes this limitation of substantive due process, and the relevant considerations have been identified in the often-cited *La Salle-Sinclair* factors. See *Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 594-95 (1999), citing *La Salle National Bank v. County of Cook*, 12 Ill. 2d 40 (1957), and *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370 (1960). As a legislative judgment, a zoning ordinance is presumed valid and may only be invalidated by clear and convincing evidence that the ordinance

as applied is arbitrary, unreasonable, and without substantial relation to the health, safety, morals, or general welfare of the public. *Zeitz*, 304 Ill. App. 3d at 595.

However, the plaintiffs in this case have not raised a substantive due process challenge to the proposed development. Accordingly, we are not called upon to evaluate the wisdom of the Village's action and need not consider such factors as the existing uses and zoning of nearby property or the community's need for the proposed use. See *Zeitz*, 304 Ill. App. 3d at 594-95. Plaintiffs instead challenge the procedure used by the Village board when it approved the development.

■ Procedural due process is a flexible concept, and the procedural protections employed must be adapted to the particular situation. *Mathews v. Eldridge*, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902 (1976). Courts must consider three factors when determining the procedural protections due process requires: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903; see also *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415-16 (1997).

Defendants argue that no Illinois court has held that procedural due process requires a right of cross-examination at a zoning hearing. Defendants also cite numerous cases from foreign jurisdictions in support of their argument that procedural due process in a zoning matter does not require a right of cross-examination. Plaintiffs in response cite additional cases from foreign jurisdictions in support of their contention that procedural due process does require the right of cross-examination. We have reviewed all of the cases cited by the parties and find only that this is an area of the law around which no clear consensus has developed. Accordingly, we find that detailed analysis of the competing authorities does not aid our resolution of this case.

Defendants also argue that cross-examination was not required by due process because the Village board was acting in a legislative capacity when it approved the Meijer development. Generally, when the ultimate authority to rule on a specific application for a variance or special use resides in a board of trustees, the board is acting in a legislative and not an administrative capacity. *Yusuf v. Village of Villa Park*, 120 Ill. App. 3d 533, 543 (1983). However, simply classifying a process as legislative does not insulate the underlying procedures from

review. See *Geneva Residential Ass'n v. City of Geneva*, 77 Ill. App. 3d 744, 755 (1979). Moreover, when a local legislative body no longer crafts rules of general application but instead acts to grant permits, make special exceptions, or decide particular cases, it functions less like a legislative body and its actions are better described as administrative, quasi-judicial, or judicial in character. *Bossman v. Village of Riverton*, 291 Ill. App. 3d 769, 772-73 (1997), citing *Ward v. Village of Skokie*, 26 Ill. 2d 415, 424 (Klingbiel, J., specially concurring). Placing such functions in the hands of legislative bodies creates an obvious opportunity for the extension of special privileges to those well-connected politically and presents a challenge to the basic concepts of due process embodied in our legal system. See *Ward*, 26 Ill. 2d at 424 (Klingbiel, J., specially concurring).

■ However, we need not consider further whether procedural due process demands greater procedural safeguards to counter the potential for abuse present when a legislative body acts as an administrative or a quasi-judicial body, because the legislature has adopted by statute additional procedural safeguards. See *Bossman*, 291 Ill. App. 3d at 773, citing 65 ILCS 5/11—13—1.1, 11—13—5, 11—13—11 (West 1994); see also *Geneva Residential Ass'n*, 77 Ill. App. 3d at 754-55. The public hearing and fact-finding requirements imposed by statute are intended to distance local legislative bodies from the fact-finding process and eliminate the *ad hoc* granting of permits. *Geneva Residential Ass'n*, 77 Ill. App. 3d at 754-55. A reviewing court will decide a constitutional issue only when it is essential to the disposition of the case. *In re Petition to Form a New Park District*, 247 Ill. App. 3d 702, 716 (1993). Therefore, we will not consider further the nature of the safeguards mandated by procedural due process because our examination of the relevant statutory procedural protections resolves the issue of the right to cross-examination.

### Statutory Requirements for Cross-examination

Defendants also contend that the Illinois Municipal Code (the Municipal Code) (65 ILCS 5/1—1—1 *et seq.* (West 1998)) did not provide for the right of cross-examination during the July 1998 public hearing on the Meijer proposal. Several sections of the Municipal Code requiring a hearing were implicated because the proposed development involved a special use, a PUD, a variation, petitions for rezoning, and an annexation agreement. Section 11—13—1.1 provides, in pertinent part, "[a] special use [including a planned development] shall be permitted only after a public hearing before some commission or committee designated by the corporate authorities." 65 ILCS 5/11—13—1.1 (West 1998). Section 11—13—5 provides "no *** variation

shall be made \*\*\* without a hearing before the board of appeals." 65 ILCS 5/11—13—5 (West 1998). Section 11—13—14 provides "no [zoning] amendments shall be made without a hearing before some commission or committee designated by the corporate authorities." 65 ILCS 5/11—13—14 (West 1998). Section 11—15.1—3 provides "[t]he corporate authorities shall fix a time for and hold a public hearing upon the proposed annexation agreement." 65 ILCS 5/11—15.1—3 (West 1998).

■ The issue of whether plaintiffs possessed a right to cross-examination turns primarily on the definition of the word "hearing" used in the Municipal Code. Few cases in Illinois have addressed this issue, but we find that *E&E Hauling, Inc. v. County of Du Page*, 77 Ill. App. 3d 1017, 1021 (1979), is squarely on point. *E&E Hauling* examined the meaning of the word "hearing" as used in the version of the Counties Code then in effect (Ill. Rev. Stat. 1977, ch. 34, par. 3158 (now codified, as amended, at 55 ILCS 5/5—12014 (West 1998))). *E&E Hauling*, 77 Ill. App. 3d at 1021. The *E&E Hauling* court held "[t]he general rule is well established that a ' "public hearing" before any tribunal or body' means 'the right to appear and give evidence and also the right to hear and examine the witnesses whose testimony is presented by opposing parties.' " *E&E Hauling*, 77 Ill. App. 3d at 1021, quoting *Braden v. Much*, 403 Ill. 507, 513 (1949). The *E&E Hauling* court also observed " '[a zoning board] often deals with important property interests; and a denial of a right to cross-examine may easily lead to the acceptance of testimony at its face value when its lack of credibility or the necessity for accepting it only with qualifications can be shown by cross-examination.' " *E&E Hauling*, 77 Ill. App. 3d at 1022, quoting *Wadell v. Board of Zoning Appeals*, 136 Conn. 1, 8-9, 68 A.2d 152, 155-56 (1949). The reviewing court concluded that the denial of a right of cross-examination to an adjoining landowner rendered the hearing improper and voided the zoning amendment. *E&E Hauling*, 77 Ill. App. 3d at 1023.

Defendants argue that the holding in *E&E Hauling* should be limited because the *E&E Hauling* court improperly interpreted the phrase "examine the witnesses" from the *Braden* opinion as the equivalent of "cross-examination." However, the authorities on which *Braden* relied clearly addressed the issue of a right of cross-examination. Compare *Braden*, 403 Ill. at 513, with *Farmers' Elevator Co. v. Chicago, Rock Island & Pacific Ry. Co.*, 266 Ill. 567, 573 (1915) ("Allowing the testimony to be heard \*\*\* without any opportunity to cross-examine the witnesses presenting it, amounts to a practical denial of the vital part of the hearing required by this statute"). We find that the *E&E Hauling* court holding was consistent with the long-established definition of "hearing."

■ Defendants also urge us to invoke the statutory construction doctrine *expressio unius est exclusio alterius* and find that the legislature did not intend the mandated public hearing to include a right of cross-examination. Under this doctrine, a court may infer that, when a statute lists certain things, those things omitted were intended as exclusions. See *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 151-52 (1997). However, this maxim is merely a rule used to help courts ascertain the intent of the legislature; it is not a rule of law. *Bridgestone/Firestone*, 179 Ill. 2d at 153. Defendants note that sections 11—13—7 and 11—13—7a specifically grant a right of cross-examination to those property owners within 250 feet of a proposed special use in a municipality with a population of more than 500,000. See 65 ILCS 5/11—13—7, 11—13—7a (West 1998). Defendants argue that, because the relevant provisions applicable to smaller municipalities do not list the right of cross-examination, this omission evinces an intent to exclude that right from the definition of "hearing." See 65 ILCS 5/11—13—1.1 (West 1998). We disagree.

First, the relevant statutory provisions do not present an opportunity for the appropriate application of this rule of statutory construction. Section 11—13—1.1 does not present a list of rights from which we may conclude that others have been excluded. Instead this section merely requires a public hearing without specifying the required elements of that hearing. An interpretation of the Municipal Code that provides significant procedural safeguards to adjoining property owners in large municipalities, including the right to subpoena witnesses, cross-examine opposing witnesses, and present witnesses on their behalf, yet provides only an illusory right to a hearing for adjoining landowners in smaller municipalities would be absurd. Rather, we conclude that the list of rights granted adjoining owners in larger municipalities demonstrates legislative recognition of the full panoply of rights envisioned in a public hearing in all municipalities.

Second, the distinction in the Municipal Code between larger and smaller municipalities merely expresses a legislative intent favoring greater flexibility in the smaller municipalities. See *Bossman*, 291 Ill. App. 3d at 773 (holding that municipalities of less than 500,000 may either vest the ultimate decision on variances in special uses in a zoning board of appeal or reserve that decision for the corporate legislative body). We find that this distinction does not imply a legislative intent that adjoining landowners in smaller municipalities are entitled to fewer procedural safeguards. Instead, we find that this distinction evinces a legislative recognition that in smaller municipalities it is

more difficult to adopt a *per se* rule defining which adjoining landowners are so adversely affected by the determination that they should be entitled to additional procedural safeguards. In other words, while a 250-foot limit may adequately identify adversely affected landowners in a metropolitan area, development in suburban or rural areas may have a greater or lesser impact on neighboring property, and municipal authorities in such areas should be free to adopt procedural rules uniquely adapted to reflect these differences.

Finally, we note that the legislature amended the zoning provisions of both the Municipal Code and the Counties Code after the decision in *E&E Hauling* without amending or clarifying the language requiring a hearing. See 55 ILCS 5/5—12014 (West 1998) (amendment of county zoning—amended by Pub. Act 89—272, eff. August 10, 1995); 65 ILCS 5/11—13—1.1 (West 1998) (special use approval by municipalities—amended by Pub. Act 86—330, eff. August 30, 1989). The legislature is presumed to know the judicial construction that a statute has been given, and when the legislature reenacts a statute without modification it is assumed to have intended the same effect. *Nevious v. Bauer*, 281 Ill. App. 3d 911, 915 (1996). Therefore, we conclude that the word "hearing" in the zoning provisions of the Municipal Code has the meaning adopted by this court in *E&E Hauling* and includes a right of cross-examination.

■ Defendants argue that allowing the general public an unlimited right of cross-examination would result in an unjustified administrative burden. Although this argument is addressed primarily to the issue of whether procedural due process requires cross-examination, we discuss it here to clarify our ruling regarding cross-examination. We note that the reviewing court in *E&E Hauling* recognized only a right to *relevant* cross-examination. *E&E Hauling*, 77 Ill. App. 3d at 1022. In a judicial proceeding, the scope of cross-examination is a matter committed to the discretion of the trial court. *Bell v. Hill*, 271 Ill. App. 3d 224, 231 (1995). The courts in our sister states that recognize a right of cross-examination in zoning hearings also recognize that the relevance of that cross-examination varies with the nature of the evidence presented and requires a similar exercise of discretion by the body conducting the hearing. See, *e.g., Hyson v. Montgomery County Council*, 242 Md. 55, 67, 217 A.2d 578, 586 (1966).

When reviewing a limitation on cross-examination, a court should consider the extent to which cross-examination is required for a full and true disclosure of the facts with due regard to the circumstances of each particular case. See *Hyson*, 242 Md. at 67, 217 A.2d at 586. We find particularly instructive the observations of the Supreme Court of Washington on this issue in the context of a petition for rezoning to

allow construction of an oil refinery. See *Chrobuck v. Snohomish County*, 78 Wash. 2d 858, 480 P.2d 489 (1971).

> "Generally speaking, in the ordinary zoning or rezoning hearing before a planning commission the cross-examination of persons expressing their views may not be appropriate or contribute anything of value to the fact-finding process. Where ***, however, the hearing assumes distinctly adversary proportions *** and complex, technical and disputed factors, revolving about such matters as oil refinery processes, air pollution, noise levels, [and] visual impact *** are involved, it would appear particularly pertinent to an objective factual evaluation of the testimony presented to permit cross-examination in a reasonable degree. Otherwise, it is possible that matters of vital significance to the fact-finding tribunal may be glossed over, obscured or omitted in a recital-like presentation of technical subjects and expert opinion." *Chrobuck*, 78 Wash. 2d at 870-71, 480 P.2d at 496.

We conclude that, at a zoning hearing, the official presiding must be given broad discretion to ensure that cross-examination is appropriate and contributes to the fact-finding process or, in other words, is relevant and reasonable. However, we hold that the deference accorded decisions regarding the relevance of cross-examination does not allow a local zoning body to adopt procedures that do not include the right to cross-examination.

We note that municipalities may adopt a wide variety of procedural devices to ease the administrative burdens of allowing cross-examination without unduly interfering with that right. For example, a municipality could adopt rules limiting the class of individual allowed to exercise a right of cross-examination. A municipality could, within reasonable limits, require those wishing to exercise the right of cross-examination to register in advance of the public hearing. Those wishing to exercise their right of cross-examination could also be required to allege some special interest beyond that of the general public. A municipality could ease the administrative burden of identifying those with a special interest by adopting a rule creating a presumption of the right to cross-examination in favor of an identified class. The legislature made a similar classification when it adopted the 250-foot notice requirement contained in section 11—13—7. See 65 ILCS 5/11—13—7 (West 1998). The desires of neighboring property owners alone cannot justify a zoning restriction, but the preservation of property values is one purpose of zoning ordinances, and the diminution of property values in a neighborhood is one factor that should be considered before a change in zoning. See *Lambrecht v. County of Will*, 217 Ill. App. 3d 591, 599 (1991); 65 ILCS 5/11—13—1 (West 1998). A

municipality should be free to adopt reasonable limitations on the right of cross-examination uniquely suited to local conditions, but the reasonableness of any limitation on the rights of adjoining property owners must be judged in light of the potential impact on property values in the neighborhood.

Similarly, a municipality may reasonably restrict the right of cross-examination based on subject matter. The presiding officer at a public hearing may identify those witnesses whose testimony will or will not be subject to cross-examination. The factors to be considered include, but are not limited to, the complexity of the issue, whether the witness possesses special expertise, whether the testimony reflects a matter of taste or personal opinion or concerns a disputed issue of fact, and the degree to which the witness's testimony relates to the factors to be considered in approving the proposal. Such a determination may be made either immediately after the witness's testimony or may be made in advance based on the anticipated testimony. Additionally, the hearing officer could adopt rules specifying which factual issues are considered relevant to the decision and limiting cross-examination to witnesses addressing those issues. Such a procedure would have the additional benefit of identifying for interested parties those factual issues considered relevant by the decision maker.

■ The case before us highlights some of these considerations. Several members of the public, both for and against the project, expressed their opinions regarding the need for development in general and how the proposed development would change the character of the community. Although public sentiment may be a relevant consideration for policy makers, cross-examination of the speakers would likely reveal little of value to the fact-finding process. On the other hand, several opponents raised concerns that questioned the accuracy of Meijer's factual presentation. For example, opponents questioned whether the traffic study was consistent with Meijer's projection of retail sales. Others questioned whether the study considered the effect of traffic on side streets. An examination of the Meijer witnesses by the public on these subjects would have been relevant to the proposed accommodations for increased traffic. Other opponents raised specific questions regarding whether a power failure would affect the proposed system for handling storm water. This too was a specific factual issue to which the Meijer witnesses could be expected to respond. However, we need not determine which public comments were relevant or what limitations on the right of cross-examination would have constituted a valid exercise of discretion because the procedure employed by the mayor prohibited *all* cross-examination by the public, without regard to the identity of the speaker or the relevance of the

question. We hold that a complete prohibition on the exercise of the right of cross-examination at a public hearing is *per se* unreasonable and does not comport with the meaning of the word "hearing" used in the Code. It is well established that the failure to comply with the statutory procedural requirements voids a zoning modification. See *Treadway v. City of Rockford*, 24 Ill. 2d 488, 496 (1962); *E&E Hauling*, 77 Ill. App. 3d at 1023. Therefore, we conclude that plaintiffs demonstrated a likelihood of success on the merits of their claim.

■ Defendants argue that, even if plaintiffs were entitled to a right of cross-examination, they waived this right by failing to object at the July 1998 hearing. We disagree. Formal objections go hand in hand with formal proceedings. *Balmoral Racing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 397 (1992). The purpose of presenting objections is to allow an administrative tribunal to correct possible procedural errors. *Balmoral Racing*, 151 Ill. 2d at 398. The mayor's statement regarding procedures at the beginning of the hearing and the tenor of his responses to requests to modify those limitations clearly indicated that the mayor would not consider procedural objections raised by the public. We hold that a formal objection to the procedures employed at a public hearing is not required to preserve allegations of error when the record indicates that such objection would have been futile. Therefore, we conclude that plaintiffs did not waive any error resulting from the denial of their right to cross-examination.

Defendants also argue that any questions raised by the public at the hearing were addressed during the approval process. However, a requirement that questions be filtered through the body conducting the hearing is an unjustified restriction on the right of cross-examination, and such a restriction is more onerous when the responses are delayed until after the hearing. See *E&E Hauling*, 77 Ill. App. 3d at 1022. Therefore, we conclude that the Village's procedures for addressing public concerns were not a substitute for the right of cross-examination created by the Municipal Code.

We emphasize that our holding here is addressed solely to the process by which the board reached its decision, not the decision itself. We will not interfere with a legislative judgment merely because we would have reached a different conclusion or we question the wisdom of the decision. See *Northern Trust Bank/Lake Forest, N.A. v. County of Lake*, 311 Ill. App. 3d 332, 336 (2000). Elected officials are accountable to the people who elected them, and the question of whether they should continue to exercise the power entrusted them by the electors is a political, not a legal, question. See *People ex rel. Cook County v. Majewski*, 28 Ill. App. 3d 269, 273 (1975); *In re Petition for Removal of Bower*, 91 Ill. App. 2d 63, 69 (1968). If the board's decision is unwise

but does not violate substantive due process, plaintiffs' remedy lies in the political arena; simply put, if unhappy, plaintiffs may campaign to throw the rascals out. On the other hand, the procedural requirements we have identified serve not to protect the public from unwise decisions but from uninformed decisions. If plaintiffs had been granted the right of cross-examination, the board may have reached the same decision, but the danger that the decision would have been based on a presentation that glossed over important facts would have been minimized. See *Chrobuck*, 78 Wash. 2d at 870-71, 480 P.2d at 496. In other words, although the board was not bound to *listen* to plaintiffs' concerns, it was bound to *hear* them before making its decision. Therefore, although we must accord the board's legislative judgment deference when considering the substance of its decision regarding rezoning, that deference does not extend to our examination of the underlying procedural requirements. See *Treadway*, 24 Ill. 2d at 496.

## Other Procedural Issues

Although the denial of plaintiffs' right of cross-examination was sufficient to sustain the trial court's finding that plaintiffs were likely to succeed on the merits of their claim, we feel that it is appropriate to briefly address additional procedural challenges raised by plaintiffs.

■ First, plaintiffs challenge the joint hearing procedure. While we recognize that such a procedure provides greater efficiency when several different bodies will be called upon to rule on the same evidence, such a procedure must be designed to address the concerns expressed in *Geneva Residential Ass'n*, and the procedure must not interfere with an independent evaluation of the proposal by the assembled bodies. See *Geneva Residential Ass'n*, 77 Ill. App. 3d at 755 (holding that the fact-finding process should be separate from the legislative determination to grant a variance).

Second, plaintiffs challenge the two-minute time limit imposed on public comments. We conclude that any such limit on public comment implicates the same concerns regarding the right to present evidence that we addressed regarding the scope of cross-examination. Therefore, we hold that, although a zoning body has the discretion to limit public comment, it should do so with care. A proceeding that incorporates an arbitrary time limit without consideration of the nature of the comments and their relevance to the factual issues presented fails to meet the statutory definition of a public hearing.

Finally, plaintiffs argue that they were further deprived of their right of cross-examination because defendants were allowed to modify their proposal after the public hearing concluded. Defendants argue that modifications to a proposed development are an inherent part of

the approval process. We recognize that a *per se* rule requiring additional public hearings following every modification of a proposed development would be unworkable. However, there is no public hearing when a party does not know what evidence is offered or considered and is not given an opportunity to test, explain, or refute. *Balmoral Racing*, 151 Ill. 2d at 410, citing *Interstate Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 93, 57 L. Ed. 431, 434, 33 S. Ct. 185, 187 (1913). Therefore, we conclude that, although modification of a proposal in response to evidence obtained during a public hearing may be appropriate, a second hearing is required when those modifications result in a material change in the nature of the development or involve a significant introduction of additional evidence.

## CONCLUSION

In the nonpublished portion of this opinion, we determine that plaintiffs have standing to challenge the annexation and rezoning of the Meijer parcel and that the trial court did not abuse its discretion when it set the amount of the bond. We also conclude that, because the public hearing did not meet the statutory requirements, including the right of cross-examination, the trial court did not abuse its discretion when it ordered a preliminary injunction.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

COLWELL, J., concurs.

JUSTICE RAPP, dissenting:

I respectfully dissent. The process of municipal annexation and zoning is a legislative function. As our supreme court has noted:

"It is well established that it is primarily the province of the municipal body to determine the use and purpose to which property may be devoted, and it is neither the province nor the duty of the courts to interfere with the discretion with which such bodies are vested unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals." *La Salle National Bank v. County of Cook*, 12 Ill. 2d 40, 46 (1957).

As an administrative body, the board possesses broad discretion in conducting its hearings. See *Village of South Elgin v. Pollution Control Board*, 64 Ill. App. 3d 565, 568 (1978). The board's discretion, however, must not be exercised arbitrarily. *Wegmann v. Department of Registra-*

*tion & Education*, 61 Ill. App. 3d 352, 356 (1978). "All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' [citation], to insure that they are given a meaningful opportunity to present their case." *Petersen v. Plan Comm'n*, 302 Ill. App. 3d 461, 466 (1998), quoting *Mathews v. Eldridge*, 424 U.S. 319, 349, 47 L. Ed. 2d 18, 41, 96 S. Ct. 893, 909 (1976). As the court noted in *Telcser v. Holzman*, 31 Ill. 2d 332, 339 (1964):

> "[P]rocedural due process in an administrative proceeding does not require a proceeding in the nature of a judicial proceeding, [citation] but is satisfied by a form of procedure that is suitable and proper to the nature of the determination to be made and conforms to fundamental principles of justice."

Zoning and annexation hearings concern matters related to the public health, safety, and morals and thus are essentially matters of public policy. It is policy decided and promulgated by elected representatives of the inhabitants of a political subdivision. It is my opinion that the board's role in this case was to conduct a fact-gathering proceeding, not a full adversarial hearing. Accordingly, " 'the full panoply of judicial procedure' does not apply to the fact-finding investigation, including 'rights of discovery, confrontation, cross-examination, and other elements of due process involved in judicial and quasi-judicial proceedings.' " *Petersen*, 302 Ill. App. 3d at 468, quoting *Jabbarri v. Human Rights Comm'n*, 173 Ill. App. 3d 227, 233 (1988).

The majority's focus on the definition of the word "hearing" to resolve these issues is, in my opinion, misplaced. The further reliance on *E&E Hauling, Inc. v. County of Du Page*, 77 Ill. App. 3d 1017 (1979), is also misplaced in that *E&E Hauling* derives its definition of "hearing" through *Braden v. Much*, 403 Ill. 507 (1949), which itself relies on *Farmers' Elevator Co. v. Chicago, Rock Island & Pacific Ry. Co.*, 266 Ill. 567 (1915). That is to say that the etymology of the holding in *E&E Hauling* is *Farmers' Elevator Co.*, which dealt with the issue of a connection between railroads, wherein the decision effectively caused the transfer of property from one litigant to another, a quasi-judicial process. The requirement of a full due process proceeding was obvious in *Farmers' Elevator Co.*, diluted in its application in *Braden*, and even more diluted in *E&E Hauling*. I do not believe that the phrase "the right to examine the witnesses," used in *E&E Hauling*, 77 Ill. App. 3d at 1021, upon which the majority relies to extend the right to cross-examination in zoning and annexation proceedings, is proper in the context of what is essentially a legislative determination. Establishing the proper zoning classification is *not* a quasi-judicial process.

The majority recognizes the need for a process that provides a proper and fair forum for all parties to present their respective positions. I have no quarrel with this, but I see a danger in the various suggestions as to procedures set out by the majority. Too much discretion is allowed the presiding officer. These requirements are best left to the legislature, from which all local zoning authority emanates.